UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY
FILED
12/21/2023
U.S. DISTRICT COURT
Northern District of WV

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       **Plaintiff,**<br><br>  v.<br><br>DIANA MAE FERNANDEZ,<br><br>       **Defendant.** | Civil Action No. 1:23-CV-_____<br>      5:23-CV-372 Bailey<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against defendant Diana Mae Fernandez ("Defendant" or "Fernandez") and alleges as follows:

## SUMMARY

1. This matter involves an offering fraud orchestrated by Fernandez in which she raised approximately $364,000 from at least 20 investors through the fraudulent offer and sale of securities.

2. Between 2018 and at least 2020, Fernandez—through her alter ego entities "The Self-Made Success" and "Diana Mae K., LLC"—orchestrated a scheme by touting the false narrative that she was a successful businesswoman with access to no-risk, short-term investments.

3. Fernandez induced investors to participate in the unregistered securities offering by claiming that she would use their money to invest in, among other things, private and publicly traded companies, cryptocurrency, and luxury real estate properties, and guaranteeing returns as high as 63 percent.

4. Instead of investing investor funds as promised, Fernandez commingled them with her own, using investor money to pay for her day-to-day living expenses and lavish hotel stays, fund numerous cash withdrawals, and make Ponzi-like payments to earlier investors.

5. By engaging in the conduct described in this Complaint, Defendant violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)] to enjoin such acts, transactions, practices, and courses of business, to enjoin Fernandez from directly or indirectly—including, but not limited to, through any entity owned or controlled by Fernandez—participating in the issuance, purchase, offer, or sale of any security (provided, however, that such injunction shall not prevent Fernandez from purchasing or selling securities for her own personal account); and to obtain disgorgement, prejudgment interest, civil money penalties, an officer-and-director bar against Fernandez, and such other and further relief as the Court may deem just and appropriate.

7. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things,

certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Northern District of West Virginia.

## DEFENDANT

9. **Diana Mae Fernandez**, age 37, is a United States citizen currently residing in Serbia. Fernandez is the founding and sole member of Diana Mae K., LLC and its sole owner and control person. She also is the founding and sole member of the Self-Made Success and its sole owner and control person.

## OTHER RELEVANT ENTITY

10. **Diana Mae K., LLC** is a New Jersey Limited Liability Company, registered on October 29, 2018. According to Fernandez, the company's primary objective was "to provide sophisticated investors an opportunity to grow their capital" through "day trading, real estate company exits, start-up buy ins, cryptocurrency and stocks."

11. **The Self-Made Success** was an unregistered entity that Fernandez portrayed as a purported incubator for start-up companies.

## FACTS

### Background

12. Between 2018 and at least 2020, Fernandez—through her alter ego entities "The Self-Made Success" and "Diana Mae K., LLC"—orchestrated a scheme by touting the false narrative that she was a successful businesswoman with access to no-risk, short-term investments.

13. As part of the deception, Fernandez portrayed herself as an experienced trader and financier who guaranteed returns as high as 63 percent by investing in private and publicly traded companies, cryptocurrency, and luxury real estate.

14. Fernandez recruited many of her investors through church groups and social networking geared toward entrepreneurs, and developed those relationships to recruit additional investors.

15. All told, Fernandez fraudulently raised more than $364,000 from at least 20 investors through false and misleading statements and omissions.

## Misrepresentations and Omissions Regarding Investment Experience and Returns

16. Fernandez made a variety of material misstatements and omissions about her investment experience and the returns associated with those investments, orally, and in writing.

17. Fernandez drafted written offering materials. One set of offering materials used by Fernandez included a document styled as an "Investor Packet." This document falsely proclaimed that Fernandez had over 15 years of investment experience and had raised $100 million across 25 countries. This offering document also stated that Fernandez only targeted "low to zero risk" investments in private and publicly traded companies, cryptocurrency, and luxury real estate.

18. Fernandez marketed three tiers of investments, which purported to guarantee returns ranging from 15 to 63 percent.

19. Investment contracts drafted by Fernandez stated the investments were "secure" and guaranteed the return of principal.

20. In early versions of the contract sent to some investors, Fernandez stated that investors could expect investment returns that ranged from 12 to 51 percent. In later iterations of the contract, Fernandez guaranteed returns of at least 15 percent within six months.

21. Many investors invested because they believed Fernandez's claims about her financial expertise and her guarantees about generating significant investment returns with no risk of loss.

### Misstatements and Omissions Regarding Use of Investor Proceeds

22. Between December 2017 and March 2020, Fernandez raised more than $360,000 from at least 20 investors, falsely claiming that she would invest their funds in private and publicly traded companies, "cryptocurrency," and luxury real estate.

23. In soliciting investments, Fernandez instructed her victims to wire money directly to her bank account, or to send funds to her PayPal address.

24. Fernandez exercised sole control over these accounts, but instead of using such funds as promised, she used the vast majority of investor proceeds for her personal benefit and the remainder to make Ponzi payments to investors to allow the fraud to continue.

25. Fernandez comingled the investor funds with her own funds into her personal bank and PayPal accounts, and used investor money as her own to pay for her day-to-day living expenses and lavish hotel stays, fund numerous cash withdrawals, and make Ponzi-like payments to earlier investors.

26. The balance of Fernandez's checking account followed a consistent pattern of being spent down to the verge of depletion until she found another victim to replenish the account with additional funds earmarked for investment.

27. For example, in May 2018, Fernandez received two wires totaling $11,000 from investors who were told that their money would be placed in "no-risk" investments.

28. At the time Fernandez received the wires, her checking account balance was $400.

29. Within a week, Fernandez spent approximately $7,200 on personal items during a trip to Barcelona and Paris, including a $2,000 purchase at an Apple Store, luxury hotel stays and dinners, and significant ATM withdrawals of cash.

30. Fernandez also made a $3,000 Ponzi-like payment to an earlier investor.

31. By the end of the week, Fernandez's checking balance was $1,343.

32. Similarly, in August 2018, Fernandez received three wires from investors totaling $67,500.

33. Over the next three months, Fernandez withdrew over $20,000 in cash from the account in various ATM withdrawals, made approximately $17,000 in Ponzi-like payments to earlier investors, and spent the remainder on a series of personal expenses, including hotel stays, clothing stores, and other non-investment related expenses.

34. As an additional example, in late June 2019, an investor wired $5,000 to Fernandez over the course of a week.

35. At the time she began sending payments, Fernandez's checking account was overdrawn.

36. As soon as the investor proceeds were deposited, Fernandez used the funds for airline tickets, hotel and spa expenses, restaurant visits, and multiple ATM withdrawals, again leaving the account overdrawn. She did not use the funds as promised.

37. Fernandez continued this pattern throughout the life of the fraud.

38. In February 2020, as her investment scheme began to end, Fernandez began accepting smaller amounts from her victims.

39. On February 14, 2020, she received a $500 wire from a victim and immediately withdrew approximately $470 from her checking account at an ATM.

40. Four days later, another investor wired Fernandez $500, and she similarly withdrew $480 on the same day at an ATM.

### Additional Deceptive Acts Regarding Investment Returns

41. To conceal her conduct and to avoid detection, Fernandez engaged in additional deceptive conduct by providing false investment returns and telling investors she could "roll[] over" investments when investors sought to redeem.

42. For example, in July 2018, Fernandez falsely informed an investor that her $6,000 investment grew 12 percent during the two months she had invested, and Fernandez recommended that the client roll over the investment because she expected profits to "skyrocket" during the coming months. The investor immediately agreed to roll over her investment based on these assertions.

43. On December 13, 2018, Fernandez sent a quarterly update to one of her investors in the Northern District of West Virginia, which falsely stated "overall strong returns of 21%" generated from investments in "startup opportunities, crypto market watch, and varied market avenues."

44. Fernandez sent a similar update to another investor in the Northern District of West Virginia on March 25, 2019, falsely stating that her initial $50,000 investment had generated returns of 18.7% and that she had the option to roll over her investment for additional six or twelve months with "guaranteed" returns of 38.5% or 70%, respectively.

45. Fernandez used a variety of additional lulling tactics to avoid returning funds to investors who demanded payment, which included altered emails suggesting that Fernandez had initiated wire transfers that her bank had stopped because of a security alert.

46. Among other lies, Fernandez falsely told investors that: (1) the invested money was tied up in escrow because of immigration difficulties associated with starting a business in Spain; (2) she was having difficulties accessing "cryptocurrency" funds; and (3) her company was filing for bankruptcy because her business partner had stolen a portion of the investment proceeds.

### Defendant Violated the Federal Securities Laws

47. The investments offered and sold by Defendant were securities within the meaning of the Securities Act and Exchange Act.

48. The investments were all in a common enterprise run by Fernandez, with the expectation of profits to be derived solely from her efforts.

49. Investors played no role in the management or operations of the investments.

50. Investors provided Fernandez with money—between 2018 and 2020, at least 20 investors gave Fernandez approximately $364,000.

51. Investors made their investment with a reasonable expectation of profits to be derived solely from Fernandez's purported ability to generate profits without any participation by any of her investors.

52. Fernandez engaged in the offer and sale of the securities by use of the means or instruments of transportation or communication in interstate commerce, the instrumentalities of interstate commerce, and/or by use of the mails.

53. Directly or indirectly, Defendant made materially false and misleading statements and omissions concerning her investment experience, the use of investor proceeds, and the returns on the investment.

54. Defendant, directly or indirectly, knowingly, or recklessly made material untrue statements and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. A reasonable investor would consider the misrepresented facts and omitted information described herein—including, among other information, misrepresentations and omissions regarding Fernandez's investment experience, use of investors' money to pay for her personal expenses, and the rates of investment returns—important in deciding whether or not to purchase the securities.

56. The untrue statements of material fact and material omissions described herein were made in the offer or sale and in connection with the purchase or sale of securities.

57. In connection with the conduct described herein, Defendant acted knowingly or recklessly. Defendant knew or was reckless in not knowing that Defendant was making material misrepresentations and omitting to state material facts necessary to make certain statements not misleading under the circumstances.

### FIRST CLAIM FOR RELIEF
(Violations of Section 17(a) of the Securities Act)

58. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 57, inclusive, as if they were fully set forth herein.

59. By engaging in the conduct described above, Defendant knowingly or recklessly, in the offer or sale of securities, directly or indirectly, by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. employed devices, schemes, or artifices to defraud;

    b. obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements

    made, in light of the circumstances under which they were made, not

    misleading; and/or

  c. engaged in transactions, practices, or courses of business which operated or

    would operate as a fraud or deceit upon purchasers of securities.

60. By engaging in the foregoing conduct, Defendant violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

61. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 57, inclusive, as if they were fully set forth herein.

62. By engaging in the conduct described above, Defendant knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails or of any facility of a national securities exchange:

  a. employed devices, schemes, or artifices to defraud;

  b. made untrue statements of material fact, or omitted to state material facts

    necessary in order to make the statements made, in light of the circumstances

    under which they were made, not misleading; and

  c. engaged in acts, practices, or courses of business which operated or would

    operate as a fraud or deceit upon any person in connection with the purchase

    or sale of any security.

63. By engaging in the foregoing conduct, Defendant violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendant from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Permanently restraining and enjoining Defendant from, directly or indirectly—including, but not limited to, through any entity owned or controlled by Fernandez—participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for her own personal account;

### III.

Ordering Defendant to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

### IV.

Ordering Defendant to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78(u)(d)(3)];

### V.

Prohibiting Fernandez from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is

required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]

pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

## VI.

Granting such other and further relief as this Court may deem just and proper.

Respectfully submitted,

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

*/s/ Maximillian Nogay*
Digitally signed by MAXIMILLIAN NOGAY
Date: 2023.12.21 17:58:20 -05'00'

Maximillian F. Nogay
West Virginia State Bar No. 13445
Assistant United States Attorney, Civil Division
P.O. Box 591
1125 Chapline Street
Wheeling, WV  26003
Phone:  (304) 234-0100
Fax:  (304) 234-0112
Email:  Max.Nogay@usdoj.gov

Christopher R. Kelly
Gregory R. Bockin
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
Telephone:  (215) 597-3100
Email:  KellyCR@sec.gov
(*Pro hac vice* to be filed)

Of Counsel:

Brendan P. McGlynn
Michael McGraw

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

Dated:   December 21, 2023